## DECEMBER TERM, 1842.

### John H. Hines *v.* A. C. Baine, *et al.*

Where covenants are mutual and dependent, and have been violated by one party thereto, and the other desires to absolve himself therefrom, he must offer to comply fully with his part of the contract, before he can do so.

H. bought land of P. and L., and gave his notes for the purchase-money, and took their bond for title ; H. did not pay his notes when due, and P. and L. sold the land to B. and M., who had knowledge of the sale to H. H. filed *his* bill, *offering to pay the* notes, and demanding title ; *held,* that H. was entitled to the land, upon payment of the notes, and that B. and M. held the legal title for the benefit of H.

P. and L. having sold land to H., and given bond for title, afterwards sold and conveyed it to B. and M., who had knowledge of the prior sale ; H. filed his bill to obtain a title, and did not make P. a party thereto ; *held,* that P. was not a necessary party to the bill, the legal title being in B. and M., as trustees for H.

The bill, in this case, alleges, that at the sale of lots in the town of Grenada, at auction, by the proprietors, John Reed purchased lots No. 75 and 76, at the price of two hundred and five dollars, for which he executed notes, and delivered them to Uriah Tyson, the agent of the proprietors, and Tyson gave bond in due form for a title, on payment of the purchase-money : that Reed went into possession, and made valuable and durable improvements, and occupied the same till some time in the year 1835, when he sold the lots and improvements to William P. Bryant and Lewis H. Bryant, for sixteen hundred dollars, or thereabouts, and transferred to the said Bryants the title-bond for said lots : that said Bryants went into possession and occupied the same till about the 23d day of November, 1836, when they sold to complainant, the terms of which sale were contained in a title-bond, given by them to the complainant, and a copy of which is filed as an exhibit with the bill, the original of which the complainant states he will file "when so required;" that the complainant, on the day of the date of said title-bond, executed and delivered his notes for the purchase-money, and received and went into possession ; that there was erected on the lots a large frame for a tavern-house, but not completed, and complainant placed the same in possession of an agent, but before complainant could move with his family into said building, which he had prepared to do at considerable expense, the said Bryants fraudulently delivered

possession of said lots to Alexander C. Baine and George K. Morton, without his knowledge, approbation, or consent; that at that time, Baine and Morton had succeeded Tyson, and become the agents of the proprietors of the town lots, with power to sell lots undisposed of, to make titles for those sold, and to collect the money due. After complainant's purchase, Reed paid to Baine and Morton, agents as aforesaid, the purchase-money, and demanded a title, but they refused to make it, and said they would make it to themselves, alleging complainant had forfeited his contract with said Bryants, and that they had purchased the said lots of said Bryants; that said Morton, before his purchase of Bryants, rented one of the houses on said lots of complainant, at $8 per month, and occupied the same under complainant; that complainant demanded possession of defendants, which they refused to surrender; that the defendants knew of complainant's purchase, when they purchased of Bryants; that the price of lots greatly enhanced before complainant's first note fell due, which was known to defendants, Baine and Morton; Bryants had never produced his notes or demanded payment thereof, but withheld and concealed the same; complainant has always been willing to comply with his contract; defendants have finished the house, and complainant is willing to allow them for improvements, judiciously made, deducting reasonable rents and damages. He then tenders the purchase-money, without producing it in Court, and prays for a specific execution, &c.

The following is a copy of the copy of the title-bond given by the Bryants:

"Know all men by these, &c. The condition of the above obligation is such, that the above bound W. P. and L. H. Bryant have this day sold unto John H. Hines two lots, or parcels of ground, known as lots Nos. 75 and 76, on the Tullahoma map, for the sum and consideration of $3575·50, for which sum said Hines executed two notes of hand, one note of the sum of $1785·25, payable on the first day of January, 1837, the other note, for the same amount, payable the first day of January, 1838. Now, if the said John H. Hines does well and truly pay the above-named notes, we bind ourselves, our heirs, and assigns, to the said John H. Hines, to make him a good and sufficient title to the above-named

lots, and this to remain in full force and virtue, until said titles are made, then to be null and void.    Given under our hands and seals, this, the 23d of November, 1836.

(Signed)                    W. P. Bryant, (seal.)

L. H. Bryant, (seal.)"

The answer of Wm. P. Bryant exhibits a copy of a receipt of Uriah Tyson, agent, to John Reed, for two notes for $102·50 each, for lots Nos. 75 and 76, one due 1st September, 1834, the other due 1st September, 1835, and assignment by Reed to the respondent, for the sum of $1400, of said receipt January 5th, 1836, and a copy of the assignment of said receipt by the respondent to A. C. Baine, the 13th January, 1837.    It denies that there were valuable or desirable improvements on said lot when he purchased of Reed, or when he sold it to Baine ; said receipt was the only evidence of title, till A. Brown and G. K. Morton, two of three agents for said town site, made a title to A. C. Baine, to said lots, upon his assignment of said receipt.    In the latter part of the year 1836, he found he would be greatly pressed for money early in the year 1837 ; and at a sale of lots in Grenada, in November, 1837, he and L. H. Bryant put up the said lots for sale at public auction, upon the terms that the purchaser would give good and satisfactory security for one half of the purchase-money the 1st January, 1837, the other half 1st January, 1838 ; that said Hines became the purchaser, but could not give satisfactory security to respondent, and L. H. Bryant (who was interested with respondent in said lot, without evidence of title); they then made a new contract with complainant, the terms of which are not explicitly stated in the copy filed by complainant, and which he believed his bond to comprehend.

The terms of the new contract (which had no connection with the sale at auction) were, that if the said Hines did not punctually pay the notes given for the same at maturity, the sale was to be void and of no effect ; and, to secure the fulfilment of the stipulations of the trade, respondent reserved the payment till the first note should be paid, and did not deliver possession to complainant, as he has falsely charged in the bill of complaint, and possession has never been given to him.    The answer stated, that it was false, that respondent concealed said notes given by said complainant, but the

truth was, payment was demanded several times of said notes, and the last time, said complainant said he had bought said lots, had a title-bond for them, and would pay for them when he pleased. Having been disappointed in getting payment to answer his pressing demands, for which purpose he had sold the lots to complainant, he, on the 13th January, 1837, sold to A. C. Baine; denies all fraud, &c.

The answer of A. C. Baine and George K. Morton states, that the title to Baine was derived as stated in the answer of Wm. P. Bryant; that Alfred S. Brown and respondent, Morton, made the title to said lots to said Baine; denies that ever said Reed demanded the title; that respondent, Morton, by deed from said Baine, became joint-owner with him for said lots. A. C. Baine admits he knew of the sale from Bryant to Hines; but he had always understood that the contract was, that said Bryant refused to give possession to Hines till the payment of the first note, and that if the payment was not made, the contract was to be void, and as if it were never made; and that Bryant had repeatedly demanded payment of Hines, and that Hines had avowed the intention not to pay for said lots till he pleased; and of these facts, said Morton acknowledges he was cognizant, before he purchased of said Baine, and they were both cognizant of Hines's having bid off the lots at auction, and failing to give security, as stated in the answer of said Bryant. Respondent, Morton, acknowledges he did agree to rent a small house on said lot from complainant; it was when under the impression the complainant was the owner, and entitled to the possession of the same by purchase from Wm. P. Bryant, under whom the respondent was then, and had been previously occupying said house. Said Reed paid his purchase-money, not to respondents, but to one Benjamin Hinson, to whom his note had been passed. They deny that there were valuable or lasting improvements on said lots, when Baine purchased from Bryant, or Morton from Baine.

The following depositions were taken for the defendants.

Uriah Tyson proved, that he gave the security to Reed for the purchase of the lots; proved Morton's handwriting as witness to the assignment from Reed to William P. Bryant, and proved the assignment from W. P. Bryant to A. C. Baine.

John Reed proved, that said receipt was his only evidence of title; proved his assignment to W. P. Bryant, and that Morton witnessed it; that he paid his note to a man named Hinson, gave him part in money, and an order on Morton for the balance, who paid it; that he never demanded a deed of Morton and Baine.

Thomas M. Jones testified, that he heard Hines was talking of finishing the building, and Bryant told Hines he considered the building his, till the first payment was made satisfactory; Hines said the first payment could be made, and he could make arrangements to do it. This was some time after the sale, the witness did not recollect when; Hines applied to him to take charge of the premises, but he did not recollect whether Bryant was present; the witness told Bryant, on the same day, what Hines had said; he replied, Hines had nothing to do with it.

L. H. Bryant, one of the defendants to the bill, was not served with process, and a motion was made to dismiss the suit for want of prosecution, under the rule which provides, that if two terms of the Court elapse without any attempt to bring a necessary party before the Court, the bill may on motion be dismissed. The case was at the same time, in case this motion should not prevail, submitted for final hearing and decree.

The bill was filed October 1, 1838.

*Rucks* and *Yerger*, for complainant.

The legal title is in Baine and Morton; they may be decreed to convey, or the legal title may be divested out of them; so they are the only necessary parties, so far as the title is concerned.

They set up to hold the lots, upon the ground, that complainant, Hines, promised to pay the first instalment to Bryant, on 1st Jan. 1837, and failed to pay it on that day, and that therefore Bryant could lawfully sell the lots, 13 days thereafter. Baine and Morton admit, that they knew of complainant's claim at the time they purchased from Bryant.

Bryant asserts this ground in his answer, as the excuse or reason why he sold to Baine, to wit: that complainant Hines was to pay him punctually, and failed to do so; and says, it ought to have been so written in the bond, but was not.

This is a plain case. Bryant sold the lots ; gave a bond for title; and took promissory notes for the purchase-money : from that moment the lots in equity became the property of Hines, and Bryant was entitled to the purchase-money. There is no pretence in the answer, that the contract was not consummated. The bond to convey, and the notes to pay, were both executed and delivered ; Bryant had the notes ; demanded the money upon the first instalment when it fell due, and still holds the notes. It is not for him now to set up, that Hines should have given security. Jones, a witness, says, that by the terms of the sale, security was to have been given for the purchase-money. It does not appear whether security was given to the notes, or not ; but there is no pretence that it was demanded and refused, or that the trade was not consumated on that account, or on any other account.

Baine and Morton were trustees — determined to make an unjust use of their power for their own advantage ; they fraudulently, and by indirect means, took the title to themselves.

Morton had rented the premises from Hines, had gone into possession under him, and could not acquire, nor set up, an opposing title.

These principles are too plain, and of too frequent occurrence, to require authorities.

The Court will divest them of title, or decree them to convey to complainant.

*Topp* and *Thompson*, for defendants.

The motion in this case is, first, to dismiss the suit for the want of prosecution ; the bill was filed 1st October, 1838, subpœna issued and returned, executed on Morton, Baine, W. P. Bryant, and their answers filed January 7th, 1839 ; and no steps have since been taken by complainant against L. H. Bryant, one of the defendants ; and, for the failure to prosecute the suit against him, the motion is made to dismiss, but the defendants, who have answered, are desirous to waive that motion, and try the cause on the merits, if the Chancellor should believe that L. H. Bryant is not a necessary party ; and it is only in the event that the Chancellor should be of opinion, that L. H. Bryant is obliged to be before the Court, and

that complainant cannot get on without having him before the Court, that the defendants who have answered, insist on their motion to dismiss, but are willing to waive this motion, and try the case on the merits, if it can *now* be dcne.

2d. On the merits, the complainant has not produced his bond for title ; Bryant, in answering as to the copy filed, says, he thought the original and contract of sale were different.   The copy of the bond filed shows, that the money was to be paid before the title was to be made.   The evidence of Tyson shows, that complainant had trifled, and did not mean to pay the money ; the first payment was to have been made 1st January, 1837 ; the bill was filed 1st October, 1838 ; the money had not then been tendered, nor is it tendered with the bill.   The answer of Bryant says, that the true contract was, that he, Bryant, was to retain possession till the first payment should be made, and, if not punctually made, that the contract was to be void ; how then can the complainant get on with a copy of the bond, (withholding the original, which the vendor alleges is different from the copy filed ?)

As to the right of Bryant to sell, on the failure of complainant to comply on his part, see 1 John. Ch. Rep. 282, 373 – 375 ; 2 Wheat. 299 ; 1 Madd. Ch. 427, in which it is settled, that a party claiming specific performance, must show that there is no fault on his part.

Again, in all cases where on a contract for the sale of land, the payment of the purchase-money is a condition precedent to the conveyance, the vendee, after default of payment, is not entitled to specific performance, though he may have paid a part of the purchase-money.   1 Madd. Ch. 419, note ; 4 John. Ch. Rep. 559 ; 5 John. Ch. Rep. 193.

That the application for specific performance is to the discretion of the Chancellor, and must present a case different from the present to authorize a decree.   See 6 John. Ch. Rep. 217, 225 ; 1 Desaus. 256 ;   14 John. Rep. 257 ;   6 John. Rep. Ch. 232 ; 2 Wheat. Rep. 299.

CHANCELLOR.    This is a bill for the specific performance of a contract, for the sale of two lots of land in the town of Grenada.

The complainant bought the lots of P., and L. H. Bryant, gave his notes for the payment of the purchase-money, and took their bond to make titles upon the payment thereof, which he now offers to do. The defendants, Baine and Morton, admit, they subsequently purchased the lots from Bryant, with notice of his previous sale to complainant, but say, that they were informed, that Hines had not complied with his contract. Bryant insists in his answer (although nothing of the kind appears in the bond) that, if the purchase-money was not paid punctually, the sale was to be void ; that it was not so paid, although demanded. There is no proof in reference to either of these facts, either as to the terms of the contract, or the demand of the purchase-money. The introduction of the bond for title is objected to, because it is but a copy from the record of its registration. This is expressly made evidence by the statute of 1837. How. and Hutch. ,610. If the defendant intended (as intimated in his answer) to deny that it is a true copy, he should have applied for a rule to compel the production of the original. I think, that Bryant was not at liberty to elect to consider the contract as rescinded. Although a contract may be rescinded by one party by acts *in pais*, yet, where such is his intention, he must give notice of it, and must put the other party in default by offering to comply fully with his part of the contract. In this case, the covenants are mutual and dependent, and before Bryant could absolve himself from the contract, he was bound to have tendered a deed, or at least offered to convey upon the purchase-money being paid. *Hudson* v. *Smith*, 20 John. Rep. 27.

There is nothing in the case going to show that there was either an offer to convey title, or that there was a demand of payment of the purchase-money, or that the complainant had any notice of the intention of his vendor, to abandon or rescind the contract. It is not necessary, that L. H. Bryant should be a party. The legal title to the lots is in Baine and Morton, and they having received that title with notice of the complainant's prior equity, they became trustees thereof for his use, and will, upon well settled principles, be compelled to convey it to him. *Sims* v. *Richardson*, 2 Littell, 276. Let a decree be prepared, in accordance with these views, appointing a commissioner to convey the legal title, upon the com-

Hines *v.* Baine, et al.

plainant's filing with the clerk of this Court a receipt for the payment of the purchase-money, or depositing the same in Court, and directing the complainant's bill to stand dismissed, if he fails, within 90 days from the date of the decree, to comply with the terms thereof.